# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————

Nº 09-CV-103 (JFB)

————————

FELIX EDWARDS,

Petitioner,

VERSUS

D.F. NAPOLI, SUPERINTENDENT,

Respondent.

————————

MEMORANDUM AND ORDER
December 16, 2011

————————

JOSEPH F. BIANCO, District Judge:

Felix Edwards (hereinafter "petitioner" or "Edwards") petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction in state court. Petitioner pled guilty to attempted murder in the second degree (N.Y. Penal Law § 125.25, as modified by Penal Law §110.00); assault in the first degree (N.Y. Penal Law § 120.10(1)); assault in the second degree (N.Y. Penal Law § 120.05(2)); criminal possession of a weapon in the third degree (N.Y. Penal Law § 265.02(1)); and bigamy (N.Y. Penal Law § 255.15). Petitioner was sentenced to eight and one-half years on the attempted murder in the second degree and the assault in the first degree counts and one year on each of the remaining counts, to be served

concurrently, with a period of five years' post-release supervision.[1]

In the instant habeas petition, petitioner challenges his conviction, claiming his constitutional rights were violated because: (1) his guilty plea was not voluntary, knowing, or intelligent; (2) he was denied effective assistance of trial counsel; and (3) the sentence imposed was disproportionate to the offense. (Pet. at 5-6.) For the reasons

---

[1] The Court notes that Edwards' petition states that he was sentenced to a determinate sentence of eight and one-half years on the attempted murder in the first degree charge. (Pet. at 1.) However, the transcript dated March 17, 2005 clearly indicates that petitioner pled guilty to attempted murder in the second degree. (March 17, 2005 Transcript ("Plea Tr.") at 14.) Moreover, on April 28, 2005, the court sentenced petitioner to eight and one half years based upon petitioner's guilty plea of attempted murder in the second degree. (April 28, 2005 Transcript ("S. Tr.") at 4.)

discussed below, petitioner's request for a writ of habeas corpus is denied in its entirety.

## I.   BACKGROUND AND PROCEDURAL HISTORY

### A.   Background

The following facts are adduced from the instant petition and underlying record.

On March 17, 2005, petitioner pled guilty to attempted murder in the second degree (N.Y. Penal Law § 125.25, as modified by Penal Law §110.00); assault in the first degree (N.Y Penal Law § 120.10(1)); assault in the second degree (N.Y. Penal Law § 120.05(2)); criminal possession of a weapon in the third degree (N.Y. Penal Law § 265.02(1)); and bigamy (N.Y. Penal Law § 255.15). (Plea Tr. at 14.) Before entering his plea, Edwards was fully advised of the nature of the charges against him and of the rights he was waiving by entering a guilty plea, including the right to appeal. (*Id.* at 5-7.) Furthermore, he denied that he was subjected to any coercion. (*Id.* at 9.) He also indicated that no promises had been made to him other than those stated in open court in his presence. (*Id.*) Edwards also stated that he was entering the plea of his own free will. (*Id.*) At the outset of the plea proceeding, petitioner stated under oath that he had discussed the plea with counsel. (*Id.* at 4-5.) Additionally, petitioner stated that he was pleading guilty because he was in fact guilty. (*Id.* at 9.)

During his plea, petitioner admitted that on August 15, 2004, he was with his wife, Shontay Morris ("Morris"), at 179 Sycamore Avenue in Islandia, Suffolk County, New York. (*Id.* at 10.) Petitioner then allocuted that he stabbed Morris in the throat twice with a pocketknife. (*Id.*) At the hearing,

when petitioner was first asked whether he was trying to kill Morris when he stabbed her, the petitioner responded, "[N]o, sir." (*Id.* at 10-11.) As a follow-up question, the defendant was asked, "You were not trying to kill her?" and he responded "Yes, sir." (*Id.* at 11.) In an effort to clarify the petitioner's response, he was asked "Okay. So I mean, having said 'no' then 'yes', you did want to kill her at that time?" (*Id.*) In response, petitioner clearly responded "Yes, sir." (*Id.*) Petitioner also acknowledged that he had been previously convicted of a misdemeanor. (*Id.* at 11-12.) Finally, petitioner confirmed that he was married to the victim on February 17, 1999, while he was legally married to Diana Calender. (*Id.* 12-13.)

On April 28, 2005, petitioner was sentenced to determinate sentences of eight and one-half years on the attempted murder in the second degree count and on the assault in the first degree count, with a period of five years post-release supervision. (S. Tr. at 4.) Further, petitioner was sentenced to one-year terms of imprisonment for each of the remaining counts, with all sentences to run concurrently. (*Id.* at 4.)

### B.   Procedural History

Petitioner moved the Supreme Court, Appellate Division, Second Judicial Department, to modify his sentence on the ground that his sentence was excessive.[2]

---

[2] Petitioner failed to submit his motion to the Supreme Court of the State of New York, Appellate Division, Second Department, seeking a modification of his sentence. Respondent alleges that petitioner moved on September 27, 2006 and "[p]redicated his application, in part, on his enrollment and participation in programs while incarcerated." (Return ¶ 7.) However, Edwards' petition indicates that the ground he raised on appeal to the Second Judicial was "the sentence imposed was

(Pet. Appendix 1.)  On December 19, 2006, the Supreme Court of the State of New York, Appellate Division, Second Department, denied petitioner's request. (*Id.*)

Petitioner applied for leave to appeal to the New York State Court of Appeals, but his application was denied because the Court of Appeals determined that "[t]here is no question of law presented which ought to be reviewed by the Court of Appeals…."  (Pet. at A2.)

On March 28, 2007, petitioner filed his first application for a writ of habeas corpus with this Court.  *See* Petition, *Edwards v. Ekpe*, No. 07-cv-1414(JFB) (E.D.N.Y. Mar. 28, 2007), ECF No. 3.  By letter dated May 20, 2007, petitioner asked this court to stay his action so that he could exhaust his state law claims.  *See* Letter dated May 20, 2007, *Edwards v. Ekpe*, No. 07-cv-1414(JFB) (E.D.N.Y. May 23, 2007), ECF No. 6. By Order dated June 6, 2007, this Court granted petitioner's stay and directed him to commence his state court proceedings within thirty (30) days and to file an amended petition within twenty (20) days of exhausting his state law claims.  *See* Order June 6, 2007, *Edwards v. Ekpe*, No. 07-CV-1414 (JFB) (E.D.N.Y. Jun. 6, 2007), ECF No. 8.  By letter dated June 28, 2007, petitioner asked this court for an extension of time to commence his state court proceedings.  *See* Letter dated June 28, 2007, *Edwards v. Ekpe*, No. 07-CV-1414 (JFB) (E.D.N.Y. July 2, 2007), ECF No. 10.  By Order dated July 5, 2007, this Court granted petitioner's request for a thirty (30) day extension to commence his state court proceedings.  *See* Order dated July 5, 2007, *Edwards v. Ekpe*, No. 07-CV-1414 (JFB) (E.D.N.Y. July 5, 2007), ECF No. 11.  By letter dated August 17, 2007, petitioner requested that this Court permit him to withdraw his petition, without prejudice to replead, in order to secure certain documents.  *See* Letter dated August 17, 2007, *Edwards v. Ekpe*, No. 07-CV-1414 (JFB) (E.D.N.Y. Aug. 17, 2007), ECF No. 13.  By Order dated August 21, 2007, this Court granted petitioner's request and dismissed the petition without prejudice. *See* Order dated August 21, 2007, *Edwards v. Ekpe*, No. 07-CV-1414 (JFB) (E.D.N.Y. Aug. 21, 2007), ECF No. 14; Pet. at A3.

On or about February 15, 2008, petitioner filed a motion pursuant to N.Y. Crim. Proc. Law § 440.10 for an order vacating his judgment of conviction claiming that his plea was "unknowing and unintelligent" because petitioner had no intent to kill the victim; and that petitioner received ineffective representation of counsel.  (Pet. at 3; Pet CPL §440.10 Motion)  Respondent filed an affidavit in opposition arguing that: (1) petitioner was procedurally barred from presenting these meritless arguments to the court since these claims rely solely and wholly on the record for their support; (2) petitioner neglected to raise these claims in his appeal; and (3) that his claims lack merit and were belied by the record.  (Return at ¶ 16.)

On June 19, 2008, in a written decision, the County Court of Suffolk denied petitioner's motion to vacate in its entirety.  (Pet. at A4.)  In its decision, the court noted

---

disproportionate to the offense in violation of the Eighth Amendment of the Constitution of the United States, was Harsh and Excessive and should be modified in the interest of justice."  (Pet. at 2.) Additionally, the Second Department's decision only addressed the excessive sentence claim.  (*Id.* at A1.) The court stated "Appeal by defendant, as limited by his motion, from a sentence of the county Courts, Suffolk County (Gazzillo, J.) imposed April 28, 2005, on the ground that the sentence is excessive. ORDERED that the sentence is affirmed.  No opinion."  (*Id.*)

that none of the issues raised by the defendant were proper because a motion pursuant to CPL § 440.10 "[i]s not to be used as a vehicle for a second appeal or as a substitute for direct appeal." (*Id.*) Moreover, the court found that petitioner "knowingly, voluntarily and intelligently" entered his guilty plea. (*Id.*) The Court also found that "[d]efendant failed to show that his sentence is 'unauthorized, illegally imposed or otherwise invalid as a matter of law.'" (*Id.*)

On December 12, 2008, the Supreme Court of the State of New York, Appellate Division, Second Department, denied petitioner's application for leave to appeal the Suffolk County Court's June 18, 2008 decision. (*Id.* at A5.) Petitioner never sought leave to the New York State Court of Appeals. (*Id.* at 4.)

C.   The Instant Petition

On January 7, 2009, petitioner moved before this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, on the grounds that his guilty plea was unknowing and unintelligent; his trial counsel was ineffective for advising him to plead guilty; and the sentence imposed was disproportionate to the offense in violation of the Eighth Amendment. (Pet. at 9.) Respondent filed a memorandum of law opposing the petitioner application on or about February 19, 2009. The Court has fully considered all submissions of the parties.

II.   STANDARD OF REVIEW

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death

Penalty Act ("AEDPA"), which provides, in relevant part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented by the State court proceedings.

28 U.S.C. § 2554. "Clearly established Federal law" is compromised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principles from [the Supreme Court's]

4

decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decisions applied clearly established federal law erroneously or incorrectly. Rather, that application must be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed feelings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F. 3d 200, 203 (2d Cir. 2006)).

III.    DISCUSSION

A.    Procedural Bar

1.    Failure to Exhaust

As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the state." 28 U.S.C. § 2254(b)(1)(A). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida*, 549 U.S. 327, 333 (2007), petitioner must fairly present his federal constitutional claims to

the highest state court having jurisdiction over them. *See Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191 n.3 (2d Cir. 1982) (en banc). Exhaustion of state remedies requires that a petitioner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (quotation marks omitted) (alteration in original)).

However, "it is not sufficient merely that the federal habeas applicant has been through the state courts." *Picard*, 404 U.S. at 275-76. On the contrary, to provide the State with the necessary "opportunity," the prisoner must "fairly present" his claims in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Duncan*, 513 U.S. at 365-66. "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and legal premises of the claim he asserts in federal court.'" *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997)). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegation were omitted, the state court has not had a fair opportunity to rule on the claim." *Daye*, 696 F.2d at 191-92 (citing *Picard*, 404 U.S. at 276; *United States ex rel. Cleveland v. Casscles*, 479 F.2d 15, 19-20 (2d Cir. 1973)). To that end, "[t]he chief purposes of

the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Id.* at 192 (footnote omitted).

2.     State Procedural Requirements

Like the failure to exhaust a claim, the failure to satisfy the state's procedural requirements deprives the state courts of an opportunity to address the federal constitutional or statutory issues in a petitioner's claim. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). "[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) (quoting *Coleman*, 501 U.S. at 735) (additional citations and emphasis omitted). Where the petitioner "can no longer obtain state-court review of his present claims on account of his procedural default, those claims are . . . to be deemed exhausted." *DiGuglielmo v. Smith*, 366 F.3d 130, 135 (2d Cir. 2004) (citing *Harris v. Reed*, 489 U.S. 255, 263 n. 9 (1989); *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991)). Therefore, for exhaustion purposes, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Keane*, 118 F.3d at 139 (quoting *Hoke*, 933 F.2d at 120).

However, "exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead if the petitioner procedurally defaulted on those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceedings." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (citing *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Coleman*, 501 U.S. at 744-51). "[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Netherland*, 518 U.S. at 162 (citations omitted).

The procedural bar rule in the review of applications for writs of habeas corpus is based on the comity and respect that state judgments must be accorded. *See House v. Bell*, 547 U.S. 518, 536 (2006). Petitioner's federal claims also may be procedurally barred from habeas corpus review if they were decided at the state level on adequate and independent grounds. *See Coleman*, 501 U.S. at 729-33. The purpose of this rule is to maintain the delicate balance of federalism by retaining a state's rights to enforce its laws and to maintain its judicial procedures as it sees fit. *Id.* at 730-31.

Once it is determined that a claim is procedurally barred under state rules, a federal court may still review such a claim on its merits if the petitioner can demonstrate both cause for the default and prejudice results therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Id.* at 750 (citations omitted). A miscarriage of justice is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

### 3.    Application

As a threshold matter, respondent argues that petitioner's claims that his trial counsel was ineffective and that his guilty plea was unknowing and unintelligent are procedurally barred from habeas review by the Court.  The Court agrees.

Edward's petition indicates that the only ground he raised on his appeal to the Supreme Court, Appellate Division, Second Department, was that "the sentence imposed was disproportionate to the offense in violation of the Eighth Amendment of the Constitution of the United States, was harsh and excessive and should be modified in the interest of justice." (Pet. at 2.)  Furthermore, the Second Department clearly indicated that the only ground raised by petitioner was that his sentence was excessive.  (Pet. at A1.)  Thus, the petitioner's claims that his trial counsel was ineffective and that his plea was unknowing and unintelligent were not properly raised on appeal, and therefore, were not fairly presented to "[t]he state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan*, 513 U.S. at 365 (quoting *Picard*, 404 U.S. at 275.  Accordingly, the claims were not properly exhausted and cannot be considered by this Court.[3]

To overcome a procedural bar, petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.  However, petitioner has failed to meet his burden.  Petitioner has not provided any explanation for his failure to properly exhaust all of his claims in state court.

Thus, because petitioner has not provided a satisfactory explanation for his failure to properly exhaust these claims in state court, and because petitioner has demonstrated neither prejudice resulting from the default nor a miscarriage of justice, the instance petition is procedurally barred from review by this Court.  In any event, assuming *arguendo* that this claim is reviewable, it is without merit, as set forth *infra*.

### B.    The Merits

### 1.    Validity of Guilty Plea

Although petitioner's claim that his guilty plea is invalid is procedurally barred, the Court finds that, assuming *arguendo* that petitioner's claim was properly before this Court, the claim is without merit.

The well-established standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S.

---

[3] It should be noted that the petitioner attempted to correct his procedural default by raising the issues of ineffective assistance of counsel and his unintelligent and unknowing guilty plea by moving pursuant to N.Y. Crim. Proc. Law § 440.10 for an order vacating his judgment.  (Pet. at A4.)  However, the County Court, Suffolk County, properly denied defendant's motion because a motion to vacate a judgment "[i]s not to be used as a vehicle for a second appeal or as a substitute for a direct appeal." (Pet. at A4.)  Petitioner sought leave of the Supreme Court of the State of New York, Appellate Division, Second Department, to appeal the decision of the County Court but his application was denied.  (Pet. at A5.)  However, petitioner did not appeal to the highest state court.

(Pet. at 4.)  Thus, the claim is still not properly exhausted and also is procedurally barred because it was denied on an adequate and independent state procedural rule.

25, 31 (1970)). Where a defendant is represented by counsel at the plea, and enters the plea upon the advice of counsel, the voluntariness of the plea depends upon whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Id.* (citations omitted). As will be discussed in more detail *infra*, the Court determines that trial counsel's advice was well within the range of competence demanded by attorneys in criminal cases. Moreover, the Court proceeds to examine the entire circumstances of petitioner's guilty plea, and concludes that petitioner's guilty plea was done knowingly, intelligently, and voluntarily.

The Supreme Court has held that, under the Due Process Clause of the United States Constitution, a trial court can only accept a guilty plea which is "done voluntarily, knowingly, and intelligently, with sufficient awareness of relevant circumstances and likely consequences." *United States v. Adams*, 448 F.3d 492, 497 (2d Cir. 2006) (quoting *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005)); *accord Godinez v. Moran*, 509 U.S. 389, 400 (1993). Normally, a guilty plea may not be collaterally attacked, since it constitutes an admission to all elements of the charged crime. *Salas v. United States*, 139 F.3d 322, 324 (2d Cir. 1998). However, a defendant may challenge a guilty plea on the grounds that it was not knowing and voluntary. *United States v. Simmons*, 164 F.3d 76, 79 (2d Cir. 1998). A conviction which is based upon an involuntary plea of guilty is inconsistent with due process of law and is subject to collateral attack by federal habeas corpus. *McMann v. Richardson*, 397 U.S. 759, 772 (1970).

"A plea is considered 'intelligent if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way,'

and it is considered 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally.'" *Manzullo v. People of New York*, No. 07 CV 744(SJF), 2010 WL 1292302, at *5 (E.D.N.Y. Mar. 29, 2010) (quoting *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988)). Indeed, a "'plea of guilty entered by one fully aware of the direct consequences' of the plea is voluntary in a constitutional sense 'unless induced by threats, misrepresentations, or perhaps by promises that are by their nature improper.'" *Morales v. United States*, No. 08 Civ. 3901, 2009 WL 3353064, at *5 (S.D.N.Y. Oct. 20, 2009) (quoting *Bousley*, 523 U.S. at 619 (internal quotations omitted)).

Petitioner claims that his plea was involuntary and unintelligent because he agreed to it after denying an intrinsic element of the crime of attempted murder. (Pet. at 5.) Petitioner argues that he did not know the charge required a specific element of intent and that the lack of intent is a potential defense to the charge of attempted murder. (*Id.*) However, the Court finds that there is nothing to support Edwards's assertion that his plea was not knowing, intelligent, and voluntary. It is clear from the record that Edwards was fully advised at the time of his plea of the nature of the charges and those rights he was waiving by entering a guilty plea. (Plea. Tr. at 5-7.) He denied any coercion, or that any promises had been made to him other than those stated in open court in his presence, and stated that he was entering the plea of his own free will. (Plea. Tr. at 9.) At the outset of the plea proceeding, petitioner stated under oath that he had discussed the plea with counsel. (Plea. Tr. at 4-5.) Petitioner indicated that he understood the rights he was giving up by pleading guilty and that he

waived his right to appeal. (*Id.* at 6-7.) Petitioner told the court that he was entering into the plea voluntarily and of his own free will and that no one made him any improper promises. (*Id.* at 6, 9.) Additionally, petitioner stated that he was pleading guilty because he was in fact guilty. (*Id.* at 9.)

Petitioner correctly argues that the element of intent is an intrinsic element of the crime of attempted murder. Under New York State Penal Law § 125.25, as modified by Penal Law § 110, a person is guilty of attempted murder in the second degree when "he engages in conduct which tends to effect the commission of such crime, with the intent to cause the death of another person, he attempts to cause the death of such person or of a third person." *Id.* However, contrary to petitioner's claim that he denied the element of intent, during his plea the petitioner specifically admitted to intending to kill Morris. (Plea Tr. at 11.) It is true that when first asked whether he was trying to kill Morris when he stabbed her twice in the throat the petitioner responded, "[N]o, sir." (*Id.* at 10-11.) As a follow-up question the defendant was asked, "You were not trying to kill her?" and he responded, "Yes, sir." (*Id.*) In an effort to clarify the petitioner's response, he was asked "Okay. So I mean, having said 'no' then 'yes', you did want to kill her at that time." (*Id.*) In response, petitioner clearly responded, "Yes, sir." (*Id.*) Therefore, petitioner admitted to all of the elements of the attempted murder in the second degree charge, including intent.

Therefore, petitioner's claim that his guilty plea was not knowing, voluntary, and intelligent is without merit. Thus, habeas relief cannot be granted on this ground.

2.   Ineffective Assistance of Trial Counsel

Notwithstanding that the Court has determined that petitioner has procedurally defaulted on his claim of ineffective assistance of trial counsel, the Court nonetheless proceeds to analyze the merits of this claim. Petitioner argues that he was denied the effective assistance of trial counsel because his trial counsel advised him to plead guilty to the charge of murder in the second degree, even though he denied the element of intent in the plea inquiry. (Pet. at 5-6.) As a result, petitioner argues that his guilty plea was not knowingly, voluntarily, or intelligently made. (*Id.*) As set forth *infra*, having reviewed the record, the Court concludes that petitioner received effective assistance of trial counsel.

a.   Standard

Under the standard promulgated by *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694.

The first prong requires a showing that counsel's performance was deficient. However, constitutionally effective counsel embraces a "wide range of professionally competent assistance," and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). The performance inquiry examines the reasonableness of trial counsel's actions

9

under all circumstances, keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Id.* at 319 (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005)). In assessing performance, a court must apply a "heavy measure of deference to counsel's judgments." *Id.* 417 F.3d at 319 (quoting *Strickland*, 466 U.S. at 691). "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 588 (citing *Strickland*, 466 U.S. at 690-91). Moreover, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.*

The second prong focuses on prejudice to the petitioner. The petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, "reasonable probability" means that the errors were of a magnitude such that they "undermine[] confidence in the [proceeding's] outcome." *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "The question to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695). In the

context of a guilty plea, in order to satisfy the "prejudice" prong, "the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

b.   Application

Here, petitioner's claim fails to satisfy the first prong of *Strickland*. It was not objectively unreasonable for petitioner's trial counsel to advise petitioner to plead guilty to second-degree murder. Petitioner argues that during the plea he clearly denied the element of intent and that once he denied the element of intent in the plea inquiry, counsel should have interceded to protect his right and explain the nature of the charges he was pleading to. However, as discussed *supra*, a review of the state court record in this case, including the plea and sentence transcripts, shows that petitioner's plea was voluntary, knowing and intelligent, and that he clearly admitted to all elements of the crime, including intent. Thus, petitioner's assertion is without merit.

Furthermore, a review of the record demonstrates that petitioner received an advantageous plea agreement by pleading guilty to attempted second-degree murder, a class B violent felony. *See People v. Silent*, 831 N.Y.S.2d 194, 195, 37 A.D.3d 625 (App. Div. 2007). Petitioner received a sentence of eight and one-half years on the attempted murder in the second degree charge, avoiding a more severe sentence. The maximum penalty for attempted murder in the second degree is 25 years in prison. *See N.Y. Penal Law §§ 110.00, 70.00*. Under the plea agreement negotiated by defense counsel, petitioner received the best

deal that was available. (Plea Tr. at 5.)[4] Thus, the performance of trial counsel for petitioner was not objectively unreasonable. Accordingly, petitioner's claim of ineffective assistance of counsel must fail.

Although Edwards' failure to show deficient performance disposes of his ineffective assistance claim, the Court also finds that, even assuming *arguendo* that trial counsel's performance was deficient, any alleged deficiencies in his trial counsel's performance did not result in prejudice to petitioner's case. "In evaluating the prejudice suffered by a petitioner as a result of counsel's deficient performance, the court looks to the 'cumulative weight error' in order to determine whether the prejudice 'reache[s] the constitutional threshold.'" *Sommerville v. Conway*, 281 F. Supp.2d 515, 519 (E.D.N.Y. 2003) (quoting *Lindstadt v. Keane*, 239 F.3d 191, 202 (2d Cir. 2001)). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. For the reasons discussed *supra*, particularly the favorable plea bargain, there is no basis to conclude that, absent counsel's purported deficiencies there was a reasonable probability that petitioner would have insisted on going to trial.

Accordingly, petitioner did not receive constitutionally deficient assistance of trial counsel with respect to his guilty plea. Thus, Edwards' request for habeas relief on the ground of ineffective assistance of trial counsel is denied. *See, e.g.*, *Jackson v. Morgenthau*, No. 07 Civ. 2757

(SAS)(THK), 2009 WL 1514373, at *15-16 (S.D.N.Y. May 28, 2009) (finding effective assistance of counsel and dismissing habeas petition when petitioner claimed that trial counsel did not sufficiently challenge the evidence supporting the indictment).

### 3.   Cruel and Unusual Punishment

Finally, petitioner argues that his sentence of eight and one-half years on the attempted murder in the second-degree count and on the assault in the first-degree count, with a period of five years post-release supervision, and one-year terms of imprisonment regarding the counts of assault in the second degree, criminal possession of a weapon in the third degree and bigamy, with all sentences to run concurrently, contravenes the Eighth Amendment's prohibition of cruel and unusual punishment. (Pet. at 5.) For the reasons set forth below, the Court disagrees and finds no basis for habeas relief in connection with petitioner's sentence on that ground.

The Eighth Amendment, which prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, bans excessive prison terms that are "grossly disproportionate" to the crime committed. *Lockyer v. Andrade*, 538 U.S. 63, 72-73 (2003); *Ewing v. California*, 538 U.S. 11, 20-21 (2003). The "grossly disproportionate" standard, however, is "applicable only in the 'exceedingly rare' and 'extreme' case." *Lockyer*, 538 U.S. at 73 (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991)). Moreover, a sentence does not run afoul of the Eighth Amendment's prohibition of "cruel and unusual punishments" if the sentence is within the range prescribed by state law. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue

---

[4] As further evidence that the petitioner received an advantageous plea agreement, the court stated at the defendant's hearing before he entered his plea, "Put it this way, this is the best deal that's available." (Plea. Tr. at 5.)

is presented where, as here, the sentence is within the range prescribed by state law."); *see also Mendoza*, 2008 WL 3211277, at *9 (denying the Eighth Amendment claim of a drug offender sentenced to an indeterminate term because petitioner's sentence was "within the statutory limits in place at the time of his conviction and sentence").

Here, petitioner's sentence falls within the statutory range prescribed by state law at the time of the original offense.  Petitioner was convicted of attempted murder in the second degree, a class "B" felony; assault in the first degree, a class "B" felony; assault in the second degree, a class "C" felony; criminal possession of a weapon in the third degree, a class "D" felony; and bigamy, a class "E" felony.  At the time of sentencing, the range for a B violent felony was a determinate sentence between five and twenty-five years. *See N.Y. Penal Law § 70.00.* The range for a C violent felony was a determinate sentence between two and seven years.  *See Id.*   At the time of sentencing, the range for a D felony was a minimum indeterminate term of incarceration of one to three years with a maximum indeterminate term of incarceration of two and third to seven years, or a definite sentence of up to one year. *See Id.* The range for an E felony was a minimum indeterminate term of incarceration of one to three years with a maximum indeterminate term of incarceration of one and a third to four years, or a definite sentence of up to one year. *See Id.*  Accordingly, consistent with the statute's prescribed range, petitioner was sentenced to eight and one-half years on the attempted murder in the first degree count and on the assault in the first degree count, with a period of five years post-release supervision, and one-year terms of imprisonment regarding the counts of assault in the second degree, criminal

possession of a weapon in the third degree and bigamy, with all sentences to run concurrently.     (S. Tr. at 4.)       Thus, petitioner's incarceration does not violate the Eighth Amendment's prohibition of cruel and unusual punishment.       As petitioner's sentence falls within the range established by state law, his claim does not present a basis for federal habeas relief.[5]

---

[5] In any event, even if the Court could review the sentence within the range prescribed by state law, the Court would find no basis to conclude that petitioner's indeterminate sentence was grossly disproportionate to the crime committed so as to violate the Eighth Amendment given the nature of his criminal activity.

IV.    CONCLUSION

In sum, the Court concludes that the petitioner's claims that his trial counsel was ineffective and that he entered a plea that was not knowing and voluntary are procedurally barred from review. However, even if those claims were not procedurally barred, the Court finds that all the claims set forth in the petition are substantively without merit because the state court's ruling was not contrary to, or an unreasonable application of, clearly established federal law. Even if the Court considered petitioner's claims *de novo*, the Court would conclude that they were all without merits for the reasons discussed *supra*. Therefore, the petition for a writ of habeas corpus is denied in its entirety.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: December 16, 2011
Central Islip, New York

\*\*\*

Petitioner is proceeding *pro se*. Respondent is represented by Edward A. Bannan, Assistant District Attorney, Suffolk County District Attorney's Office, 200 Center Drive, Riverhead, NY 11901.